Next case on this afternoon's call is agenda number 24, case number 105-320, People of the State of Illinois v. Marquez Harris. Good afternoon. May it please the court, counsel. My name is Tom Corrales. I'm with the Office of the State Appellant Defender and I'm here today representing the defendant, Marquez Harris. Now, when the defendant took his direct appeal from a conviction of armed robbery to the Third District of the Appellate Court, he raised two arguments. In the first argument, he complained of the state's impeachment with the defendant's previous adjudication of delinquency. And in the second issue, he raised a sentencing argument. After the Appellate Court affirmed the defendant's conviction and sentence, this court granted the petition for leave to appeal to address the new trial issue. Now, what this court should initially decide in this appeal is whether to entertain the new grounds that the state has offered in support of the trial judge's decision to allow the state to introduce the defendant's prior adjudication of delinquency as impeachment. Both in the trial court and before the Appellate Court, the parties took the position that the prior adjudications could only come in in response to the defendant's direct examination testimony. No one even focused on Marquez's juvenile record until after he had testified. The state had committed itself to the position that the defendant could not be impeached with evidence of his adjudications as a minor so long as he didn't bring up that subject during his direct examination. And this was the state's position not just in the trial court but also in the Appellate Court. Now, however, the state is making a primary argument that the prosecution would have been justified and the trial judge would have had the discretion to allow impeachment with the adjudication of delinquency regardless of how the defendant testified. But doesn't the Harris exception apply? I'm sorry? Doesn't the Harris exception apply? One justice of the Appellate Court decided that Harris v. New York was an appropriate basis for finding that the defendant's adjudication of delinquency could impeach him as to the specific testimony. But that still is dependent upon how the defendant testified. Just as in the Harris case, a defendant is only impeached if he says something on the witness stand that contradicts that which was brought out in the suppression hearing. But didn't the defendant testify in front of the jurors that he didn't commit crimes like the jurors didn't? Right, right. And that's the opening of the door that the state committed itself to as the sole grounds for allowing impeachment with the adjudication. The state's primary argument now is not that. That's their Part 3 argument in the briefs. The Part 2 argument the state is saying, we can just do General Montgomery-type impeachment and you can determine that before the witness even gets on the witness stand. Should we ignore the Juvenile Court Act which allows it? I think you should. I believe that this Court had already adopted the Federal Rule of Evidence 609D as the grounds for when a juvenile adjudication can be used to impeach. And that rule, which is as good as the rule of this Court, limited to non-testifying defendants or minors. The Juvenile Court Act now purports... Could you repeat that last one? The Federal Rule permitted discretionary impeachment of a witness with his prior adjudication so long as he is not the testifying defendant. I'm sorry, I thought you said witness. Oh, thank you for helping me. So the new statute in the Juvenile Court Act purports to override the adoption of the Montgomery Rule. And it's within this Court's power to either yield to that new amendment or to find that it's in direct conflict with a rule of this Court's procedure, which is what I propose, that it is in conflict with a rule that this Court had already established governing the only appropriate time that an adjudication of delinquency could be used to impeach. I agree with the People v. Jefferson. Jefferson? Yes. It was cited by... We cited the Harris case in our case in Jefferson. You're not familiar with it? I don't know what the case is. We allowed in Jefferson the introduction of evidence regarding polygraph testing, which, as you know, is normally off limits. We allowed it there because Defendant Jefferson had opened the door to it in her direct examination. In our opinion, we stated that our allowance of the evidence was, quote, My question, I guess, to you is, how does our use of Harris there affect your argument here today? If polygraph evidence can be admitted once the defendant opens the door, why can't juvenile adjudications be admitted once the door is open? Correct. And we're making an assumption, which I will be refuting, whether the door was opened. But to address that, it would be only appropriate to do in one way, and that's the way that impeachment is done in response to specific testimony in all other situations is through cross-examination with an appropriate foundation that the typical manner would be a Harris v. New York type where there was a case proceeding that the defendant is now refuting or testifying in contradiction to. The ground, the means for impeaching that testimony is to lay a foundation on cross-examination to find out whether or not the door has truly been opened. The way it was done here was purely the type of impeachment that Montgomery allows. No cross-examination covered whether the defendant opened the door. The state had never asked the defendant, do you mean to tell this jury that you've always obeyed the law? They simply waited until the proofs were closed and asked for the admission of the defendant's adjudications and certified court records in this rebuttal case. Doesn't that diminish the effect of the impeachment? Well, if the impeachment is going to be allowed at all, that might be diminishing it, but it needs to be perfected. It needs to be established that there is something to impeach. Otherwise, the jury is going to wonder, why is this exhibit here? We don't believe that the defendant said that he didn't commit a crime when he was 15 years old. It is part of the record of this case from the transcript of this hearing that these statements were made? I'm sorry, what statement? The statement about, I'm like the jurors, I don't commit crimes. That statement is a part of the transcript. How does your argument, Mr. Torellis, regarding that the trial court abused its discretion by admitting the prior adjudications by certified copy rather than cross-examination square with what we held in the Coleman case? And I'll give you the quote. It is improper to cross-examine a defendant about a prior conviction, even where the conviction has been properly introduced into the evidence. And what's saying this indeed implies, even when the prior conviction is being used to impeach a specific piece of defendant's testimony, doesn't that defeat your argument on the direct cross-examination versus certified copy? Well, there are instances where cross-examination of prior convictions is proper, where the defendant has specifically testified concerning some but not all of his past criminal record. And I don't have an issue as much with whether or not the prosecutor lays out the full details of the prior record of delinquency in cross-examining or the documents come in. The problem I have comes a little bit earlier in this whole process, and that is have we established that the door has been opened by the statement, I am like you. I work. I go to college. I don't commit crimes. Coming from a 20-year-old defendant, the crime that impeached that was from when he was 15 years old. The question has to be addressed whether or not the door was opened. What do you take from a statement of a 20-year-old? I go to college. I work. I don't commit crimes. How far back do you take that? I'm glad you framed that as to whether the door is open because I think Justice Freeman struck on something. A large portion of these briefs, and I anticipate the arguments, deal either with the Montgomery Rule or whether the Juvenile Court Act provision is constitutional or not. The Jefferson case, which really didn't play a large part in the briefs, but as Justice Freeman pointed out, says that evidence that is inadmissible, in that case polygraph evidence, may become admissible if the defense opens the door to its introduction. You just mentioned open the door. So I'd like to ask you a question. Assume your client, and I know he didn't do this, but assume your client had testified that he never committed a crime in his life. I mean, couldn't be more specific. Never committed a crime in his life. Under those facts, would the state be allowed to impeach him with his prior juvenile adjudications? Under those facts, just based on the Jefferson rationale that Justice Freeman brought up? I think in fairness to the state, either of two things could happen. He could be within the trial judge's discretion, in my opinion. Either he could be impeached with the contradictory proof that directly contradicts his statement, or the judge could ask the jury to strike the comment. Okay. So I'm going to take that as a yes. All right? That's fine. Okay. So if that's a yes, then we are left with forget Montgomery, forget Harris, forget the Juvenile Court Act. Think about the reasoning behind the Jefferson case. And the only issue then boils down to what we haven't gotten to yet, is whether your client did or did not open the door, right? Agreed. I agree with that. I think the crux of this case is whether or not the door was open. And if it was not open, then we don't even raise the question of how is the impeachment to be done. Is it to be done in the same way that prior inconsistent statement impeachment would be done? Is it to be done through the introduction of the certified copies as demonstrative exhibits? But the first question, and the question which Justice O'Brien, in her dissenting opinion on the appellate court, I believe reasonably answered, is what does the statement of a 20-year-old defendant, I don't commit crimes, I go to college, I work, I'm just like you, open the door to? How, what time frame do you? Why is it significant? Why is the age of the person who's testifying significant? Well, because A, the rehabilitation values that are still intact in the Juvenile Court. This is a youthful defendant with. Certainly not subject to the Juvenile Court Act in this case. That's correct. But the prior infringements of the law occurred when he was subject to the Juvenile Court jurisdiction. And how does that affect his present understanding of what's going on? Because he is portraying himself like the jurors who are adults. He is trying to, in my brief, I make the point that the statement could as well be read and not permit impeachment as I have straightened my life out. I go to college. I work. I'm a 20-year-old just like you. I don't commit crimes. In that light, the use of five-year-old, you know, youthful offense. I thought there was something more recent than that. No. Well, it's a 2000 event that resulted in an adjudication in the year 2001. 1998. That's old. The most recent juvenile event is the aggravated battery and aggravated discharge from the year 2000. I have all five offenses for felons. Were there five offenses? Yep, from his 12th birthday until his 15th. And the most recent was when he was 15 years old. Counsel, how would you define opening the door? I think the cases, Brown is the people versus Brown is the closest case, I believe, that's cited in my opening brief and in my reply brief, to where the defendant affirmatively contradicts an aspect of his prior record, narrowing it to the context of this case, the existence or nonexistence of prior run-ins with the law, adjudications or finished convictions, where there's an affirmative denial of some, if not all, of a person's prior crimes. And that's what the Brown case says, is if the defendant takes the witness stand and tries to minimize the extent of his record, I've been arrested once.  And the state had proof at its disposal that there was more than that. Now the door has been opened. And just as in the Jefferson case, you have a case where there's evidence that ordinarily could not be admitted, but the defendant has just exposed himself to the admission of that testimony. And we have three justices who've come to three different conclusions in the appellate court regarding this testimony of the defendant, which- That's an interesting issue, right? Because we review whether or not the door was open as to whether the trial judge abused his discretion in believing that the door was open, right? True. That's the standard. So we're interested, and how interested are we in the question here? The defendant is asked, did you commit this crime? That's right. And he says, I have it here, no, sir, there is no possible way that I could have committed this crime. Then he goes on to talk about where he went to school and everything, and then he ends with the operative words here, I don't commit crimes. Couldn't that be reasonably interpreted as an assertion that I didn't commit this crime or any other crimes? Well, that brings me back to the point of the age of the defendant. I believe that that statement coming perhaps from a person who has a 10-year period of adult life and you could look back and make a determination under a Montgomery test, are any of those general impeachment priors? And no, the judge says they're too prejudicial. He has something when he was 21, he's now 29. It's remote, it's prejudicial, I'm not going to allow it in. That person taking the stand and saying, I don't commit crimes, he's had a period of adult life which he has committed crimes. In an instance of a 20-year-old, he's believed that he's outlived his youthful adventures that ran afoul of the law. I don't know if he's thinking that technically I don't have any convictions by saying that statement. Mr. Corrales, shouldn't we focus on what the jury heard though? If we have three appellate justices having different opinions of what the statement was, aren't we supposed to be impressed with how does the jury hear this? And what their impression might be of what it is and that's why impeachment needed to occur? That seems appropriate to me. You have 12 jurors all hearing this statement and then the next thing that they receive that remotely deals with that statement is a certified copy that the defendant was adjudicated, delinquent minor, for a shooting. But Counselor, again, to follow up on what Justice Thomas questioned, we're here to review whether the trial court abuses discretion in using that statement from the defendant, whether that opened the door. Is that not correct? That is correct. That is the standard. And I believe that the correct interpretation of whether that was an abuse of discretion was the one made by Justice O'Brien in the appellate court, that this statement was a present tense statement of somebody who had only been an adult for a couple years, who hadn't had any run-ins, any marks against his record for five years, for four years going back to the date of the formal court adjudication. So the time period is a critical thing here? Four years, five years? I do believe that is relevant. If he was 18 when he made this statement and he had this prior record? The closer you get between the statement from the witness stand and the last experience in the criminal courts or the juvenile courts, the more it opens the door. I mean, I'll admit that it's a close question. I've talked to a number of people about this and looking for almost a survey of what do you think this says when the person has a five-year-old, you know, before he had a driver's license, crying that he, I'm sure he hasn't forgotten about, but his hope is not haunting him. Counselor, does it make any difference that there were five felonies as opposed to one when you review that question as to what was in his mind at the time he answered the question or what was in the judge's mind in exercise his or her discretion in allowing this in? If taking your premise that the further removed that this is from the time that he's testifying, does the number of crimes make any difference? Well, that would be relevant, but each of the other prior juvenile adjudications preceded the one that was admitted. I think it would be more relevant if you had adjudications of delinquency from his 15th birthday running all the way up until a year before, you know, the charge that he was on trial for. Then the numbers and the remoteness or recency would add up against it. But given the remoteness, I mean, I believe that the defendant is trying to say he's a different person than he was before. He's a 15-year-old. I'll time you up. Okay. Thank you, Justice. You're welcome. Come as long whenever you're ready. Give us just a second. You want to make sure you get every moment. Absolutely. You may proceed. Good afternoon, Your Honors. Counselor. May it please the Court. My name is Sherry Wong, and I'm an Assistant Attorney General here on behalf of the people of the State of Illinois. Your Honors, this Court should affirm the judgment of the Third District Appellate Court for the following three reasons.  First, the First District's decision in People v. Montgomery adopting that rule of evidence. Second, the defendant opened the door in this case under the United States Supreme Court decision in Harris v. New York and the First District's decision in People v. Bunch where he testified on direct examination that he doesn't commit crimes. And finally, even if this Court finds that the trial court abused its discretion in admitting the defendant's prior juvenile adjudication, any error by the trial court was harmless where there was overwhelming evidence of the defendant's guilt in this case. Now turning to the first issue, I'd like to start with the argument that the people cannot raise the argument that Section 5-151C of the Juvenile Court Act trumps proposed rule of evidence 609D. My opposing counsel correctly points out that we did not raise this issue in the trial court or in the appellate court. However, even though we did not raise this issue below, this is a new position but it's not a contrary or inconsistent position with the arguments that we raised below. And there's been no violation, therefore, of the principle that this Court articulated in People v. Franklin. Now in that case, this Court held that a prevailing party may raise in support of judgment any reason appearing in the record but may not do so if that position is inconsistent or contradictory with the position that was taken below. Here in this case, we are arguing in this appeal that Section 5-151C allows for the general impeachment of a testifying defendant with a prior juvenile adjudication. In the trial court and the appellate court, we argue that under proposed rule of evidence 609D, a testifying defendant cannot be impeached with a prior juvenile adjudication. We're not arguing in this appeal that proposed rule of evidence 609D allows for this type of impeachment. Therefore, the position that we're taking in this appeal is not contradictory or inconsistent with the position that we took below. Second, even if this Court finds that the positions are contradictory, this Court should exercise its supervisory authority to reach this issue. There's no dispute between the parties here that there's a conflict that exists between Section 5-151C and proposed rule of evidence 609D. These are two provisions that appear to cover the same subject matter, the impeachment of a testifying defendant with a prior juvenile adjudication. And this Court should take the opportunity where neither this Court nor the appellate courts have specifically construed the language. If we were to decide this case under Harris, would we have the problem that we're dealing with now with state statute and conflict with the rule? No, Your Honor. This Court can decide this case and affirm the defendant's conviction under Harris v. New York. However, this Court should also decide which provision is the controlling provision regarding the impeachment of a testifying defendant with a prior juvenile adjudication, particularly in this case where the defendant has not suffered any prejudice as a result of the people raising this issue for the first time in this appeal. What about the rationale that the Court came up with and questioned Mr. Corrales about, that it's as simple as evidence that is inadmissible becomes admissible when someone perjures himself on the stand? That's correct, Your Honor. Are you adopting that as well? I'm sorry? I guess you're adopting our argument as well? That's correct, Your Honor. That's probably a pretty good thing to do. Under Jefferson, I would not disagree with this Court. Under Jefferson and the United States Supreme Court's decision in Harris v. New York, the principle that otherwise inadmissible evidence can become admissible where the defendant opens the door on direct examination by testifying falsely or misrepresents a part of his criminal history. In Harris v. New York, the United States Supreme Court addressed a situation where the defendant gave testimony on direct examination that was contrary to statements that he had given to police following his arrest. And the state in that case sought to introduce the statements that he had given to the police, statements that had been taken in violation of the defendant's Fourth Amendment rights under Miranda, statements that normally would not have come in. However, the United States Supreme Court said that where the defendant had opened the door by testifying falsely, those statements could become admissible to impeach his testimony. Even if he were to agree that this evidence should be admitted, do we not have another question to answer after that? Should we not require that the convictions be certified, or can the state just bring it out through cross-examination? Your Honor, this Court has expressed a preference. As Your Honor noted in People v. Coleman, it has also expressed a preference in People v. Natasio and People v. Bay, that the proper way to impeach a defendant with a prior conviction is to introduce a copy of that certified conviction, certified copy of that conviction. Was that done here? That was done here, Your Honor. The state sought to introduce certified copies of the defendant's prior juvenile adjudications rather than to conduct a cross-examination of the defendant. And this was perfectly proper of the trial court to allow this for several reasons. First, as the lead opinion in the Third District held, it would likely have led to a broader scope of inquiry regarding the defendant's prior juvenile history if the state was allowed to conduct a cross-examination about it. The defendant here has five prior juvenile adjudications on his record, of which the trial court was aware of. However, the trial court decided to simply allow the introduction of the two most recent adjudications rather than to allow the defendant's entire juvenile history. From 1997 to 2000, the defendant has been consistently committing crimes. And the trial court, acknowledging that there was going to be some prejudice to the defendant if you allowed a prior conviction to come in, agreed that it would be best to minimize that prejudice if he simply allowed the two most recent ones as opposed to allowing all five. And this was not an abuse of the trial court's discretion to allow the impeachment to be conducted this way. Now, the main focus of the argument was whether or not here the defendant actually opened the door to the introduction of his prior juvenile adjudication. Counsel, before you get into that, let me go back to your first point about the amendment in the statute. Make sure I've got it. That's the 150-1C amendment, right? That's correct, Your Honor. So it talks about allowing the use of those juvenile adjudications and records and so forth to be admitted, but doesn't the amendment itself end with the clause that says, and pursuant to the rules of evidence for criminal trials? That's correct, Your Honor. What does that phrase mean? Does it not encompass the evidentiary rule of Montgomery? Your Honor, it would, and that's why those two are conflicting provisions. This proposed rule of evidence 609D is a rule of evidence that this impeachment would be subject to. However, because they are in conflict, the legislature, by enacting section 5-151C, was showing its intent to supplant the proposed rule of evidence 609D. Well, if they wanted to wipe out Montgomery, why would they even make reference to the rules of evidence? The rules of evidence clause relates to other rules of evidence, of materiality and relevancy, and it also relates to other rules of evidence that this Court articulated in Montgomery, mainly proposed rules of evidence 609A and B. Well, could it be read harmoniously to say these kinds of records are now admissible, but you have to balance to determine if they should be admitted? Certainly, Your Honor, and under section 5-151C, if a trial court were to admit a prior juvenile adjudication under that section, it would still be required to conduct the balancing test articulated by this Court in Montgomery pursuant to proposed rules of evidence 609A and B. Therefore, the Court would have to determine whether the juvenile adjudications were under 10 years old, whether they involved a crime of dishonesty or false statement, whether there was a punishment in excess of a year, and most importantly, the trial court would have to determine whether the probative value of admitting the adjudications was substantially outweighed by the danger of unfair prejudice. So you agree there should be a balance with that? Absolutely, Your Honor. I guess I missed your point when you said it's a plan. I thought you meant it just wiped it out. Well, under proposed rule of evidence 609D, juvenile adjudications are generally inadmissible to impeach a testifying defendant. Section 5-151C would allow a testifying defendant to be impeached with this prior juvenile adjudication so long as that balancing test is still conducted by the trial court. And this is perfectly consistent with the changes that the legislature was making to the Juvenile Court Act. This Court has recognized those changes in People v. Taylor, that in 1998 the legislature recognized that there was going to be a shift between the policy and purposes underlying juvenile court proceedings, that there was a fundamental shift between the initial goal and the primary goal of rehabilitating a juvenile, and now there are these overriding concerns of protecting society from juvenile crime and holding juvenile offenders accountable for violations of the law. These two overriding concerns have now been explicitly incorporated in Article V of the Juvenile Court Act. If I may, on the issue of the conflict on a procedural rule, conflict between the judiciary and the legislature, who gets the final say? Well, this Court would have the final say, but in this case, this Court's decision in Does that situation exist here where we clearly have a rule that prohibits the use of the juvenile record? Again, I'll pick up the statute that says the exact opposite. That's correct, Your Honor. This Court would have to determine where there are two conflicting provisions, which provision is going to be the governing provision. And this Court's There's certainly authority to suggest that the Court's rule would be the governing provision. The Court's rule? The Montgomery rule? In this instance, it was the Montgomery rule. In another case, it could be a Supreme Court rule. In either case, it was clearly the pronouncement of the Court. These were the rules of procedure that affected impeachment, as stated elsewhere. I would characterize the rule as a rule of evidence rather than a rule of procedure, and under that characterization, this Court in Roelfingmeyer has held that the legislature has the power to prescribe new rules of evidence and to alter existing rules of evidence. And in this case, we have a rule of evidence, Proposed Rule of Evidence 609A, which the legislature, pursuant to its public policy determinations for policies underlying juvenile court proceedings, decided that Section 5-151C should be the new governing provision. And there is support for Your answer is, in this case, the legislature would have the call. Yes, Your Honor. And this Court has previously decided a very similar type issue, where it has rejected a separation of powers challenge, which is what is being made here, to a similar rule of evidence relating to prior inconsistent statements. If I could provide Your Honor with a little background. In People v. Collins, a 1971 decision from this Court, this Court held that prior inconsistent statements could not be used to impeach a witness. It could be used to impeach a witness, but could not be used substantively. And then in 1984, the legislature enacted Section 115-10.1 of the Criminal Code, which specifically authorized the substantive use of prior inconsistent statements in a criminal trial. In People v. Orange, a decision that followed four years later, this Court specifically rejected the separation of powers challenge to the legislature's enactment of Section 115-10.1. This Court held that the fact that this Court had stated in Collins that prior inconsistent statements could not be used substantively did not preclude the legislature from doing so. And that same type of analysis should be applied here. Simply because this Court said in Montgomery that prior juvenile adjudication should not be admissible to impeach a testifying defendant does not preclude the legislature from deciding, pursuant to public policy determinations, that general impeachment of a testifying defendant should be allowed. So under this Court's decisions in Rolfingsmeier and in Collins, the legislature has the authority to enact Section 5-151C. Now if we could go back to the argument about whether here the defendant opened the door to the introduction of his prior juvenile adjudications, Your Honors have cited the testimony that has led to the opening of the door. And it's not simply the statement where the defendant testified that he doesn't commit crimes that this Court should consider. It should also consider the fact that the defendant gave a monologue here. He not only denied committing the crimes, but he also stated, people who commit crimes like that have a motive for doing so. I don't have a motive for doing so because I am a professional man, I go to school, I live a productive life, I live just like any of the other jurors, and I don't commit crimes. Now given the defendant's prior juvenile history, with five prior juvenile adjudications on his record, the trial group properly exercised its discretion and reasonably only allowed the introduction of the two most recent adjudications arising out of a single transaction, rather than allowing all five of the adjudications to come in. The meaning that the defendant here is trying to apply is that the defendant here was simply saying, I don't commit crimes, intending to convey the idea to the jury that he's not committing crimes at this very moment or he's not committing crimes in the present tense. However, if this is the meaning that was to be given to the jury or to the trial court, it's not a plausible meaning because the jury could simply see that for themselves that he was not committing crimes at that very moment. He was implying that he had not committed crimes in his juvenile history. So you can open the door by implication? He was making an affirmative statement here, Your Honor. It's not simply by implication. He was stating with his entire testimony that he doesn't commit crimes, that he lives just like any of the jurors. He lives a law-abiding life. And the timing here is important in that the defendant's prior juvenile adjudications were less than 10 years old, so it would fall under that Montgomery principle. However, these are recent adjudications. They're only for he committed the crime in August of 2000 and was adjudicated delinquent in January of 2001. However, there's a short time span between his sentencing in February of 2001 and then also his committing of the instant crime in August of 2004. The defendant here committed the crime and was adjudicated delinquent in January of 2001. He was sentenced to the Juvenile Department of Corrections in February of 2001, paroled from the Juvenile Department of Corrections in January of 2002, violated his probation, and then was sentenced back to the Juvenile Department of Corrections in October of 2002. He was then discharged from his sentence in May of 2004. So there is a short time span, and there's a lot of activity that's happening between the time that the defendant was adjudicated delinquent of these offenses and the time that he committed the instant offense in August of 2004. Now, even if this court finds that the trial court abused its discretion in admitting the prior juvenile adjudications, any error committed by the trial court was harmless where there was overwhelming evidence of the defendant's guilt in this case. Now, this court held in People v. Steckley that the fact that a defendant's prior jury trial ended in a mistrial based on a jury's failure to render a verdict is certainly a factor that this court can consider in determining whether the evidence was close in this case. However, when this court conducts an independent examination of the evidence that was presented at the defendant's third jury trial, it will find that the evidence that was presented at this trial was not substantially identical to the evidence that was presented at the defendant's first and second jury trials. Rather, it was significant impeachment evidence which attacked the credibility and the reliability of the defendant's key alibi witnesses in his case, and it was this impeachment evidence, not the introduction of the defendant's prior juvenile adjudication, which is the dispositive factor here. The key to the inconsistent testimony in this case is not simply the quantity of the inconsistencies that were pointed out by the people, but also the quality of these statements, and that the testimony at the third trial showed that the memories of the two alibi witnesses provided by the defendant, those memories were not getting fuzzier or less precise over time as one would expect given that memories tend to fade over time. However, they were getting more precise, the alibi testimony was getting stronger so as to corroborate the defendant's alibi in this case. And people were able to point out these inconsistencies to the jury and the jury was able to determine that these witnesses were completely unreliable. One of the main inconsistencies had to do with the witnesses' time that they were providing the alibi for the defendant. In this case, the armed robbery occurred at 1 a.m. And at the first jury trial, the first key alibi witness, or the second key alibi witness here testified that she could corroborate the defendant's alibi until 11 p.m. However, at the second jury trial she testified that she was with the defendant until 1.30 a.m. And at the third jury trial, further moving the time back to corroborate the defendant's alibi, she could corroborate him until 2 a.m. So there's a constant progression here that would make the defendant's alibi witnesses appear stronger. But when pointed out, these inconsistencies tended to undermine the reliability in front of the jury. And when compared to the testimony that was provided by the people's eyewitness testimony, the evidence here was overwhelming. The people presented two eyewitnesses positively and consistently identified the defendant as one of the armed robbers in this case, both of whom viewed the defendant at the time of the robbery under circumstances that would tend to indicate that their identification testimony was reliable. So when comparing the unreliable witness testimony of the defendant's key alibi witnesses to the positive and consistent testimony of the state's identification witnesses, the evidence here was overwhelming. And even if the trial court, even if this court finds that there was an abuse of discretion in admitting the defendant's prior juvenile adjudication, any error was harmless given the overwhelming evidence of the defendant's guilt in this case. This court has no other questions for me. Since we've got a minute left, maybe. So really does it come down to, in terms of deciding, opening the door, whether or not we give a present tense, reading, or past tense? It does. But in this case, Your Honor, we can decide based on the defendant's testimony that he was implying to the jury, he was representing to the jury, that he had no criminal history, that he was a law-abiding citizen. Okay. But can you tell me what the actual words you used, what words referred to past tense as opposed to the statements about, I work, I'm going to get this out of order, I am a professional man, I work, I go to college, I live a productive life, I live just like any of the 12 jurors. Then he says, I don't commit crimes. Those statements are all present tense statements, Your Honor. However, given the entire context of the statement. Well, that's what I'm working for. The disputed statement is, I don't commit crimes. Other than that, what's the context that points us back as opposed to present? That's what I'm looking for. If the defendant had said, I have never committed a crime, certainly that would have been a clear case in the situation that we have here. But since the defendant was trying to imply with his present tense statements that he had never committed a crime, that was sufficient to open the door. If it isn't the context of his statement, there's no way that he could have committed this crime. That's why I'm just trying to understand your argument. When he says that, how does that point to his less than sterling juvenile career? I think this point has to look to also the statement where he says, I live just like any of the other jurors. I don't commit crimes. All these statements together can be construed as an affirmative representation, even though they're in the present tense, that he had never committed a crime. If the defendant was simply trying to convey by saying, I don't commit crimes, that he is not committing crimes in the present tense, then that's simply not a plausible reading of the defendant's testimony in this case. Thank you. Thank you. Ms. Morales, if you don't mind,  We have to speed up the clock. Understood. You may proceed, sir. I will try to be brief. I can see that this case is really narrowing down to whether or not those statements of the defendant were opening of the door or not.  You have to disregard or extremely minimize the prospect of rehabilitation. And I would just make an analogy to going over some college campus and interviewing people on the quad and saying, are you a violent person? And they say no. But now you can show that they received detentions in high school five times for being a bully in the lunchroom. Does that mean that they're lying? No. It really has to do with whether or not your past haunts you. And that's why I believe the age is important and the five-year span of time is important. With respect to the new argument concerning just using the Montgomery test as the rules of evidence that would apply, as with any other witness, in using an adjudication to impeach a defendant, that is inconsistent with the approach from the earlier proceedings. For example, in the Garden Variety Montgomery situation, the parties will almost always litigate a motion in limine to try and find out whether and how many of the proposed witnesses' prior convictions will come in. Once the decision has been made as to whether any impeachment is going to be allowed or which priors will be introduced, the defendant has a chance to decide whether or not to take the witness stand. That did not happen here because there was an implied agreement. We don't know, I don't know from off the record, but there may have even been discussions between the attorneys that we know that normally we cannot use these adjudications as Montgomery impeachment. So to argue now, after two layers of the courts, that this is not contradicting the previous arguments is putting the defendant at a disadvantage because had he known that under Montgomery just his most recent gun-involved prior would come in, it would have definitely changed the decision-making process about whether or not he would take the witness stand. The court has no other questions. No rest. Mr. Corrales, Mr. Clark, thank you very much for participating in these arguments today. It was much appreciated. Mr. Marshall, at this time, case number 105-320 will be taken under adjournment.